# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

COUNTRYMAN NEVADA, LLC,

    **Plaintiff,**

v.               **Case No:   6:14-cv-491-Orl-18GJK**

MISTI ADAMS,

    **Defendant.**

---

## REPORT AND RECOMMENDATION

  This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF, COUNTRYMAN NEVADA, LLC'S, MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT, MISTI ADAMS (Doc. No. 19)** |
| **FILED:** | **October 9, 2014** |

---

  **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND.

### A.  The Complaint.

  Plaintiff holds the copyright registration for the motion picture titled "Charlie Countryman" (the "Movie"), and, thus, holds all right, title, and interest in the copyright for the Movie, including the right to sue for past infringement.   Doc. No. 13 at ¶¶ 21, 23-24.[1]   On March 26, 2014, Plaintiff

---

[1]  A copy of the copyright registration for the Movie is attached to the Complaint.   Doc. No. 13-1.

filed a complaint (the "Original Complaint") against Defendant – whose true identity was unknown at the time[2] – asserting claims of copyright infringement (Count I) and contributory copyright infringement (Count II) arising from the unauthorized reproduction and distribution of the Movie via an internet peer-to-peer ("P2P") transfer technology called BitTorrent.   Doc. No. 1.[3]   On April 23, 2014, Plaintiff filed a Motion for Leave to Serve Non-Party Subpoena Prior to Rule 26(f) Conference (the "Motion for Leave"), requesting leave of court to serve a non-party subpoena on Defendant's ISP in order to discover Defendant's true identity, i.e., her name and address.   Doc. No. 6.   On April 25, 2014, the Court entered an order granting the Motion for Leave.   Doc. No. 9.

On August 5, 2014, after discovering Defendant's true identity, Plaintiff filed an amended complaint (the "Complaint") against Defendant.   Doc. No. 13.   Plaintiff alleges Defendant "initiated her infringing conduct by . . . intentionally logging into one of many BitTorrent client repositories known for their large index of copyrighted movies" and "intentionally obtain[ing] a torrent file for [the Movie] and intentionally load[ing] that torrent file into a program designed to read such files."   *Id*. at ¶ 11.   Once loaded, Defendant's "BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users processing and 'sharing' copies of the [Movie.]"   *Id*. at ¶ 13.   Through this process, the Movie "was copied to Defendant's computer," which, in turn, made the Movie, or portions thereof, available on Defendant's computer for "other [BitTorrent] users seeking to obtain the [Movie], without degradation in sound or picture

---

[2] Plaintiff originally identified Defendant as Doe 36 in its initial complaint because she was only known to Plaintiff by the internet protocol address she was assigned by Bright House Networks, her internet service provider ("ISP"), at the time the alleged infringing activity occurred.   *See generally* Doc. Nos. 1; 1-2.

[3] P2P networks, such as BitTorrent, are computer networks that enable users to make files stored for copying by others, search for files stored on other users' computers, and transfer exact copies of files from one computer to another.   Doc. No. 13 at ¶ 7.

quality."   *Id*. at ¶¶ 13-14, 16.   On January 21, 2014, Plaintiff's investigator recorded Defendant

unlawfully reproducing and distributing the Movie via BitTorrent.   *Id*. at ¶¶ 10, 26.

Plaintiff alleges that Defendant's actions resulted in the unlawful reproduction and

distribution of the Movie.   *Id*. at ¶¶ 6, 30.   As a result, Plaintiff claims that Defendant is liable for

copyright infringement (Count I) and contributory copyright infringement (Count II).   *Id*. at ¶¶

31-44.   Plaintiff further alleges that Defendant's acts of infringement were "willful, intentional,

and in disregard of and with indifference" to its rights in the Movie.   *Id*. at ¶¶ 36, 42.   In light of

Plaintiff's willful and intentional acts of infringement, Plaintiff requests Defendant be permanently

enjoined as follows:

> [F]rom directly or indirectly infringing Plaintiff's rights in the
> copyrighted [Movie], including without limitation by using the
> Internet to reproduce or copy Plaintiff's [Movie], to distribute
> Plaintiff's [Movie], or to make Plaintiff's [Movie] available for
> distribution to the public, except pursuant to a lawful license or with
> the express authority of Plaintiff.   Defendant also shall destroy all
> copies of Plaintiff's [Movie] that Defendant has downloaded onto
> any computer hard drive or server without Plaintiff's authorization
> and shall destroy all copies of the downloaded [Movie] transferred
> onto any physical medium or device in Defendant's possession,
> custody, or control[.]

*Id*. at 8-11.   Plaintiff also requests an award of either actual or statutory damages, pursuant to 17

U.S.C. § 504, attorneys' fees, and costs.   *Id*. at 9, 11.

**B.   Clerk's Default.**

On August 12, 2014, Plaintiff filed a return of service, in which the process server averred

that Defendant was served on August 7, 2014.   Doc. No. 16.   Specifically, the process server

averred that he served the summons and a copy of the Complaint on Defendant's son, who was

sixteen (16) years old at the time of service, at Defendant's usual place of abode.   *Id*.   On

September 9, 2014, Plaintiff filed a motion for clerk's default, pursuant to Rule 55(a), Federal

Rules of Civil Procedure.   Doc. No. 17.   On September 10, 2014, the Clerk entered default against Defendant.   Doc. No. 18.

### C.  Motion for Default Judgment.

On October 9, 2014, Plaintiff filed a Motion for Entry of Final Default Judgment and Permanent Injunction Against Defendant, Misti Adams (the "Motion").   Doc. No. 19.   Plaintiff maintains the allegations in the Complaint demonstrate that it is entitled to default judgment against Defendant on Counts I and II.   *Id.* at 2, 5-9.   Accordingly, Plaintiff requests the Court to enter default judgment against Defendant, permanently enjoin Defendant as described in the Complaint, award it $150,000.00 in statutory damages pursuant to 17 U.S.C. § 504, and award it $1,929.50 in attorneys' fees and costs.   *Id.* at 2-4.

## II.    STANDARD OF REVIEW.

When a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.   Fed. R. Civ. P. 55(a).   However, the mere entry of default by the Clerk does not in itself warrant the entry of default judgment by the Court.   *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4] Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered.   *Id.*; *see Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").   A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal.   *Buchanan v. Bowman*, 820 F.2d 359, 361

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

(11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206).   Although it must accept well-pled facts as true, the Court is not required to accept a plaintiff's legal conclusions.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Notwithstanding the propriety of default judgment against a defendant, it remains incumbent on the plaintiff to prove the amount of damages to which he or she is entitled.   "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages."   *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007); *Whole Space Indus., Ltd. v. Gulfcoast Int'l Prods., Inc.*, Case No. 2:09-cv-217-UA-SPC, 2009 WL 2151309, at *3 (M.D. Fla. July 13, 2009) (same).   Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]"   *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were speculative and not proven by a fair preponderance of the evidence).

The Eleventh Circuit has explained that "[f]ederal law . . . requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default.   *Anheuser Busch*, 317 F.3d at 1266.   Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.   *See S.E.C. v. Smyth*, 420 F.3d 1225,

1231 (11th Cir. 2005).   However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."   *See Id.* at 1232 n.13; *see also Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

## III.   <u>ANALYSIS.</u>

### A.  Service & Clerk's Default.[5]

Rule 4(e), Federal Rules of Civil Procedure, governs service on an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – in a judicial district of the United States.   The rule provides that service on an individual may be accomplished by:

> (1)  following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2)  doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).   In Florida, service on an individual may be accomplished by either "delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper" or "by leaving the copies at his or her usual place of abode with any

---

[5] The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338(a), and personal jurisdiction over Defendant, who resides in and committed the alleged infringing activity in Brevard County, Florida. Doc. Nos. 6-1; 13 at ¶¶ 3-5.

person residing therein who is 15 years of age or older and informing the person of their contents." Fla. Stat. § 48.031(1)(a).

The return of service indicates that Defendant's son, who was sixteen (16) years old at the time of service, was served with the summons and a copy of the Complaint at Defendant's usual place of abode and advised of the contents of the documents served.   Doc. No. 16.[6]   Based on the return of service, the undersigned finds that Defendant was properly served in accordance with § 48.031(1)(a), Florida Statutes.   Defendant had twenty-one (21) days from the date of service – August 7, 2014 – to respond to the Complaint.   Fed. R. Civ. P. 12(a)(1)(A)(i).   To date, Defendant has neither responded to the Complaint nor appeared in this action.   Accordingly, the Clerk properly entered default against Defendant.   Fed. R. Civ. P. 55(a).

### B.  Liability.

#### 1.  Copyright Infringement.

To establish a prima facie case of copyright infringement, two (2) elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."   *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

To satisfy the first element, "a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities."   *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995)).   In a judicial proceeding, a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."   17 U.S.C. § 410(c).   Once the plaintiff

---

[6] Plaintiff maintains Defendant is "not an infant, nor is she believed to be an incompetent person" and "not a member of the United States Military."   Doc. No. 19 at ¶ 2.

produces a certificate of registration, "the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman*, 79 F.3d at 1541.

To satisfy the second element, the plaintiff must establish that the "alleged infringer actually copied plaintiff's copyrighted material." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010). However, factual proof of copying is only part of satisfying the second element. "[T]he plaintiff must also respond to any proof advanced by the defendant [signifying] that the portion of the work actually taken does not satisfy the constitutional requirement of originality[.]" *Id*. "If a plaintiff survives a challenge to the originality requirement, they must also prove that 'the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar.'" *Id*. (quoting *Lotus*, 49 F.3d at 813).

As for the first element, Plaintiff alleges that it holds the copyright registration for the Movie. Doc. No. 13 at ¶ 23. The copyright registration, which has an effective date of February 4, 2013, is attached to the Complaint, and indicates that the Movie was first published in 2013. Doc. No. 13-1. Since the effective date of the copyright registration is "before or within five years after first publication of the work," the copyright registration constitutes "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). Accepting these well-pled allegations as true, the undersigned finds that Plaintiff has satisfied the first element necessary to prove copyright infringement.

As for the second element, Plaintiff alleges Defendant copied the Movie, which contains "wholly original material," through a P2P network called BitTorrent. Doc. No. 13 at ¶¶ 11, 13, 22, 28.[7] Plaintiff further alleges that each time Defendant distributed a copy of the Movie from her computer via BitTorrent the recipient was able to distribute that copy to others "without

---

[7] Since Defendant has not responded to this action, there is nothing contradicting Plaintiff's claim of originality concerning the Movie.

degradation in sound or picture quality." *Id*. at ¶¶ 13-14, 16.   Accepting these well-pled allegations as true, the undersigned finds Plaintiff has satisfied the second element necessary to prove copyright infringement by establishing that Plaintiff copied the Movie, which contained original material, to the extent "that it rendered the offending and copyrighted works substantially similar." *Latimer*, 601 F.3d at 1233 (quoting *Lotus*, 49 F.3d at 813).   Accordingly, it is **RECOMMENDED** the Court find Plaintiff is liable for copyright infringement.

### 2. Contributory Copyright Infringement.

One commits contributory copyright infringement by intentionally inducing or encouraging direct infringement.  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) (stating "the test for contributory infringement has been formulated as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'") (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

As discussed above, Plaintiff alleges Defendant copied the Movie through a P2P network called BitTorrent.   Doc. No. 13 at ¶¶ 11, 13, 28.   Plaintiff alleges that once the Movie was copied onto Defendant's computer the "BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and 'sharing' copies of the [Movie]." *Id*. at ¶¶ 13, 40.   Plaintiff alleges that through this process the Movie, or portions thereof, was made available on Defendant's computer for other BitTorrent users seeking to obtain the Movie, to copy it "without degradation in sound or picture quality." *Id*. at ¶¶ 13-14, 16, 41. Accepting these well-pled allegations as true, the undersigned finds Plaintiff had sufficient knowledge of her infringing activity as well as the infringing conduct of others who received copies of the Movie from her to be held liable for contributory copyright infringement.

Accordingly, it is **RECOMMENDED** the Court find Plaintiff is liable for contributory copyright infringement.

### C.  Relief Requested.

#### 1.  Permanent Injunction.

Plaintiff seeks to permanently enjoin Defendant from further infringement of the Movie, including the destruction of all copies of the Movie she currently has in her possession, custody, or control.   Doc. No. 19 at 2-3.   A court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."   17 U.S.C. § 502(a). A plaintiff seeking a permanent injunction must demonstrate the following: 1) it has suffered an irreparable injury; 2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) the public interest would not be disserved by a permanent injunction.  *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Although the Motion contains no argument as to why a permanent injunction should be entered, the well-pled allegations of the Complaint nevertheless establish each of the necessary elements.[8]   In particular, the well-pled allegations of the Complaint establish that by virtue of Defendant's use of BitTorrent to obtain an unlawful copy of the Movie, countless other BitTorrent users are able to unlawfully obtain a copy of the Movie, or portions thereof, from Defendant's computer "without degradation in sound or picture quality."   Doc. No. 13 at ¶¶ 14, 16, 19.

---

[8] A party requesting relief must demonstrate that he or she is entitled to the relief requested, whatever it may be.   This necessarily requires the party to provide the Court with a motion containing an explanation as to why he or she is entitled to the requested relief.   Although the Motion does not explain why Plaintiff is entitled to a permanent injunction against Defendant (*see* Doc. No. 19), the record, as discussed below, demonstrates that Plaintiff is entitled to a permanent injunction against Defendant.   However, Plaintiff's counsel are admonished that the Court will deny future motions for default judgment that do not include an explanation as to why their client is entitled to a permanent injunction.

Although Plaintiff has presented no evidence of actual damages, the seemingly unknowable extent of Defendant's infringement renders other remedies at law, such as monetary damages, inadequate to compensate Plaintiff for injuries it has sustained or may sustain in the future due to Defendant's infringement.   As for balancing the hardships likely to result from the permanent injunction requested by Plaintiff, Defendant has not shown that she will suffer any hardship if permanently enjoined from further infringement.   On the other hand, Plaintiff will certainly continue to suffer damages, such as lost revenue from the sale of the Movie, if Defendant is not enjoined as requested by Plaintiff.   Finally, there is no indication that the public interest would be adversely affected if Defendant is enjoined from infringing Plaintiff's copyright in the Movie.   For these reasons, it is **RECOMMENDED** the Court enter a permanent injunction against Defendant consistent with that requested by Plaintiff in the Complaint (Doc. No. 13 at 8-11) and Motion (Doc. No. 19 at 2-3).[9]

### 2.  Statutory Damages.

The United States Copyright Act allows a copyright owner to recover statutory damages for an infringement.   Here, Plaintiff seeks statutory damages of $150,000.00.   Doc. No. 19 at 3-4.   In awarding statutory damages under the Copyright Act, for each work infringed by any one infringer that is liable individually, or for which any two or more infringers are liable jointly and severally, the Court generally may award not less than $750.00 or more than $30,000.00, "as the court considers just."   17 U.S.C. § 504(c)(1).   The Court, however, may increase the statutory damages to as much as $150,000.00 per work infringed where the copyright owner sustains the burden of proving the infringement was committed willfully.   *Id*. at § 504(c)(2).   In any event,

---

[9] Plaintiff attached a form judgment to the Motion for the Court's consideration.   Doc. No. 19-3.   The permanent injunction contained in the form order is not consistent with the injunction sought in the Complaint.   Specifically, it contains language concerning who is covered by the injunction that is not present in the injunction sought in the Complaint.   *Compare* Doc. No. 13 at 8-11 *with* Doc. No. 19-3 at 3.   "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."   Fed. R. Civ. P. 54(c).   Pursuant to Rule 54(c), Federal Rules of Civil Procedure, it is **RECOMMENDED** the Court not enter the permanent injunction contain in the form order (Doc. No. 19-3 at 3) attached to the Motion.

"[t]he Court has wide discretion to set an amount of statutory damages." *Tiffany (NJ), LLC v. Dongping*, 2010 WL 4450451, at *6 (S.D. Fla. Oct. 29, 2010) (citing *Cable/Home Commc'n Corp. v. Network Prod. Inc.,* 902 F.2d 829, 852 (11th Cir. 1990)).   In exercising its discretion Courts in this District have considered the following factors: 1) the expenses saved and the profits reaped; 2) the revenues lost by the plaintiff; 3) the value of the copyright; 4) the deterrent effect on others besides the defendant; 5) whether the defendant's conduct was innocent or willful; 6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and 7) the potential for discouraging the defendant.   *Bait Prods. Pty Ltd. v. Murray*, Case No. 8:13-cv-169-T-33AEP, 2013 WL 4506408, at *5 (M.D. Fla. Aug. 23, 2013) (quoting *Rolex Watch U.S.A., Inc. v. Lynch*, Case No. 2:12-cv-542-FtM-38, 2013 WL 2897939, at *5 (M.D. Fla. June 12, 2013)).

Plaintiff contends that Defendant's acts of infringement were "willful, intentional, and in disregard of and with indifference" to its rights in the Movie.   Doc. No. 13 at ¶¶ 36, 42.   Based on Plaintiff's well-pled facts, the Court may infer Defendant willfully infringed Plaintiff's copyright of the Movie.   *See, e.g.*, *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (inferring that the alleged infringement was willful, as a result of defendant's default, based on allegations of willfulness in plaintiff's complaint).   However, "[s]tatutory damages are not intended to provide a plaintiff with a windfall recovery; they should bear some relationship to the actual damages suffered." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008) (internal quotation omitted).   Here, Plaintiff has failed to provide any evidence of lost sales, profits, or licensing fees as a result of the infringement or the value of the copyright to assist the Court in determining the appropriate amount of statutory damages to award.   *See* Doc. Nos. 13; 19.   The absence of such evidence strongly

weighs against a finding that Plaintiff is entitled to the maximum statutory damage award. Further, an amount much less than the statutory maximum should have a sufficient deterrent effect on Defendant and anyone else who becomes aware of the Court's decision in this case.   The vast majority of courts in this District addressing cases nearly identical to the one at bar have awarded the plaintiff $6,000.00 in statutory damages.   *TCYK, LLC v. Martin*, Case No. 8:14-cv-87-T-27TBM, 2014 WL 6978149 (M.D. Fla. Dec. 9, 2014) (awarding $6,000.00 in BitTorrent copyright infringement case despite Plaintiff's request for $150,000.00 in statutory damages); *Thompsons Film, LLC v. Velez*, Case No. 6:13-cv-671-Orl-36TBS, 2014 WL 3721288, at *6 (M.D. Fla. July 28, 2014) (same); *Bait Prods. PTY Ltd. v. Wallis*, Case No. 8:13-cv-165-T-31-DAB, 2013 WL 5653359, at *6 (M.D. Fla. Oct. 15, 2013) (same); *Bait Prods. PTY Ltd. v. Aguilar*, Case No. 8:13-cv-161-T-31DAB, 2013 WL 5653357, at *6 (M.D. Fla. Oct. 15, 2013) (same); *cf. Murray*, 2013 WL 4506408, at *7 (awarding $25,000.00 in statutory damages in BitTorrent copyright infringement case).   Plaintiff has provided no authority in support of imposing the maximum statutory damage award against Defendant.   In light of the foregoing, the undersigned finds an award of $6,000.00 in statutory damages strikes an appropriate balance between compensating Plaintiff for its lost profits without providing it a windfall, and deterring Defendant and others from further infringing activity.   Accordingly, it is **RECOMMENDED** the Court award Plaintiff $6,000.00 in statutory damages.

### 3.  Attorneys' Fees & Costs.

Plaintiff seeks $1,382.50 in attorneys' fees and $547.00 in costs.   Doc. No. 19 at 2, 10-11.   The Copyright Act provides the following with respect to attorneys' fees and costs:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.   Except as otherwise

provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The Copyright Act seeks to stimulate artistic creativity for the general public good and discourage infringement. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526-27 (1994). Awarding attorneys' fees and costs addresses these goals because it enables people to vindicate or defend their rights where it would otherwise be uneconomical to do so. *Id*. at 529. Fees and costs of suit are commonly awarded by courts in copyright infringement cases when the defendant defaults. *Arista*, 298 F. Supp. 2d at 1316. Under the circumstances of this case, the undersigned finds Plaintiff is entitled to recover its attorneys' fees and costs.

### a. Attorneys' Fees.

In the Eleventh Circuit, the reasonableness of the attorneys' fees requested is generally determined using the familiar lodestar approach. "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party moving for fees has the burden of establishing that the hourly rate and hours expended are reasonable. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). In making such determinations, the Court is an expert on the issues of the prevailing market's reasonable hourly rates for similar work and hours expended. *Id*.

Plaintiff provides an affidavit from its counsel, Richard Fee, Esq., in support of its request for attorneys' fees. Doc. No. 19-2. Mr. Fee avers that he has been practicing law for twenty-five (25) years and is the president of the law firm IP Enforcement Law Group, P.A. *Id*. at ¶¶ 2-3. Mr. Fee avers that he spent 0.5 hours working on this case at an hourly rate of $425.00, while co-counsel, Catherine Yant, Esq., spent a total of 5.2 hours working on this case at an hourly rate of

$225.00.  *Id*. at ¶ 8.  Mr. Fee avers that the time he and Ms. Yant spent on this case includes "investigating the facts, drafting and filing the Complaint, and preparing other filings, including the default."  *Id*. at ¶ 8.

While the time spent prosecuting this case is reasonable, the hourly rate requested by Mr. Fee is not.[10]  This was a straight forward internet infringement case, requiring minimal experience and effort to prosecute.  The only evidence provided in support of Mr. Fee's hourly rate is his affidavit, which alone is not satisfactory evidence that the requested rate is in line with prevailing market rates.  *Norman*, 836 F.2d at 1299.  Based on the undersigned's knowledge of the prevailing market rates in this District for similar work, the undersigned finds that $300.00 is an appropriate hourly rate for Mr. Fee in this case.  *Velez*, 2014 WL 3721288, at *8 (reducing Mr. Fee's requested hourly rate of $425.00 to $300.00 in copyright infringement case).  As for Ms. Yant, Plaintiff has provided no information concerning her experience.  *See* Doc. Nos. 19; 19-2. Nevertheless, the Court finds that $225.00 is a reasonable hourly rate for Ms. Yant in this case. *Velez*, 2014 WL 3721288, at *8 (finding Ms. Yant's hourly rate of $225.00 to be objectively reasonable).  Accordingly, it is **RECOMMENDED** that the Court award Plaintiff a total of $1,320.00 in attorneys' fees.[11]

### b.  Costs.

As previously mentioned, Plaintiff is entitled to recover its "full costs[.]"  17 U.S.C. §

---

[10] Plaintiff does not provide a time sheet detailing the time spent on each task performed in this case.  The lack of such information hampers the Court's ability to determine the reasonableness of the time counsel spent working on the case.  Nevertheless, in this instance, the amount of time counsel spent working on the case appears reasonable. However, Plaintiff's counsel are admonished that the Court will deny future motions seeking an award of attorneys' fees that fail to include a time sheet detailing the time spent on each task performed.

[11] This figure is calculated as follows: $150.00 ($300.00 hourly rate x 0.5 hours of work by Mr. Fee) + $1,170.00 ($225.00 hourly rate x 5.2 hours of work by Ms. Yant) = $1,320.00.

505.[12]   The party seeking costs must provide sufficient detail and documentation regarding the requested costs so that the opposing party may challenge the costs and so the court may conduct a meaningful review of the costs.   *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335-36 (S.D. Fla. 2000).   Failure to provide sufficient detail or supporting documentation verifying the costs incurred and the services rendered can be grounds for denial of costs.   *Pelc v. Nowak*, Case No. 8:11-cv-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013) (citing *Johnson v. Mortham*, 173 F.R.D. 313, 318 (N.D. Fla. 1997)).

Plaintiff requests a total of $547.00 in costs, which consists of $400.00 for the filing fee, $30.00 for "subpoenaed information from Bright House Networks," and $117.00 for serving Defendant.   Doc. Nos. 19 at 10-11; 19-2 at ¶ 9.   The filing fee is recoverable.   *Family Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp*, Case No. 8:11-cv-217-T-30AEP, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) (finding filing fees fall within the category of "[f]ees of the clerk and marshal.").   Likewise, the fee for the subpoenaed information from Bright House Networks is reasonable and recoverable, since the information was necessarily obtained for use in the case (i.e., to determine Defendant's true identity).   28 U.S.C. § 1920(4).

The fee charged by the private process server is recoverable, but the amount sought is not reasonable.   The Court looks to 28 U.S.C. §§ 1920(1) and 1921 for guidance in determining whether the cost sought by Plaintiff for service of process is reasonable.   "Private process server fees may be taxed pursuant to §§ 1920(1) and 1921 as long as they do not exceed the statutory fees authorized in § 1921."   *Access for the Disabled, Inc. v. Missouri Mart, Inc.*, Case No. 8:05-cv-

---

[12] Courts within the Eleventh Circuit disagree over whether a prevailing party in a copyright infringement action is limited to recovering the costs enumerated under 28 U.S.C. § 1920.   *Compare Guetzloe Grp., Inc. v. Mask*, Case No. 6:06-cv-404-Orl-22JGG, 2007 WL 2479335, at *2 (M.D. Fla. Aug. 28, 2007) *with Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117, at *15 (S.D. Fla. July 1, 2008).   The Court need not address the proper scope of costs recoverable in a copyright infringement action, since the costs sought by Plaintiff are all recoverable under § 1920.

392-T-23MSS, 2006 WL 5432711, at *4 (M.D. Fla. Dec. 7, 2006) (quotations omitted) (citing *EEOC v. W & O, Inc.*, 213 F.3d 600 (11th Cir. 2000)).   The statutorily authorized fee for § 1921 is set forth in 28 C.F.R. § 0.114.   The record reveals that Defendant was served after October 30, 2013 (Doc. No. 16), at which time the U.S. Marshals Service was authorized to collect $65.00 per hour for service of process, plus travel costs and any other out-of-pocket expenses.   28 C.F.R. § 0.114(a)(3) (2013).   Plaintiff has provided no evidence that service took longer than an hour, or the process server incurred travel costs or other out-of-pocket expenses in connection with serving Defendant.   *See* Doc. Nos. 19; 19-2.   Absent such evidence, the undersigned finds Plaintiff should only recover $65.00 for serving Defendant.   Accordingly, it is **RECOMMENDED** the Court award Plaintiff a total of $495.00 in costs.[13]

## IV.   CONCLUSION.

Accordingly, it is **RECOMMENDED** that:

1.   The Motion (Doc. No. 19) be **GRANTED** as follows:

    a.   Default judgment be entered in Plaintiff's favor and against Defendant;

    b.   Defendant be permanently enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture titled "Charlie Countryman" (the "Movie"), including without limitation by using the internet to reproduce or copy Plaintiff's Movie, to distribute Plaintiff's Movie, or to make Plaintiff's Movie available for distribution to the public, except pursuant to a lawful licenses or with the express authority of Plaintiff. Defendant also shall destroy all copies of Plaintiff's Movie that Defendant has downloaded onto any computer hard drive or server without Plaintiff's

---

[13] This figure is calculated as follows: $400.00 (filing fee) + $30.00 (subpoenaed materials from Bright House Networks) + $65.00 (service of process) = $495.00

authorization and shall destroy all copies of the downloaded Movie transferred onto any physical medium or device in Defendant's possession, custody, or control;

c.  Plaintiff be awarded a total of $6,000.00 in statutory damages against Defendant;

d.  Plaintiff be awarded a total of $1,320.00 in attorneys' fees against Defendant; and

e.  Plaintiff be awarded a total of $495.00 in costs against Defendant;

2.  Otherwise, **DENY** the Motion; and

3.  Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 16, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy